**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

**FILED**
Dana Wilson, Clerk
United States Bankruptcy Court
Savannah, Georgia
*9:20 am, Nov 14 2024*

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Chapter 13 |
| LOIS M. ANTMAN, | ) |
| | ) Number <u>23-60317-EJC</u> |
| *Debtor.* | ) |
| ———————————————— | ) |
| | ) |
| O. BYRON MEREDITH, III Chapter 13 | ) |
| Trustee, | ) |
| | ) |
| *Movant,* | ) |
| | ) Contested Matter |
| v. | ) |
| | ) |
| LOIS M. ANTMAN, | ) |
| | ) |
| *Respondent.* | ) |
| ———————————————— | ) |

<u>**OPINION ON CHAPTER 13 TRUSTEE'S
OBJECTION TO CONFIRMATION**</u>

Lois M. Antman, the Debtor in this Chapter 13 case, has claimed a $43,000.00

homestead exemption in her personal residence. Under Georgia's exemption statute,

a debtor may exempt her "aggregate interest, not to exceed $21,500.00 in value, in

real property or personal property that the debtor or a dependent of the debtor uses

as a residence[.]" O.C.G.A. § 44-13-100(a)(1). Or, "[i]n the event title to property

1

used for the exemption . . . is in one of two spouses who is a debtor, the amount of the exemption . . . shall be $43,000.00[.]" *Id.* Here, the Debtor's father in his will left his home to her and to her three siblings in equal shares; he died in 1996, and his probate case has languished ever since. The Debtor and her husband have lived in the home since 1999. The Chapter 13 Trustee concedes that the Debtor is entitled to a $21,500.00 exemption but, in his objection to confirmation of her Chapter 13 plan, opposes her claimed $43,000.00 double exemption because, among other reasons, she has only a partial interest in the residence.

The parties agree that confirmation of the Debtor's plan hinges on whether she is entitled to claim the $43,000.00 "double" exemption or is limited to the $21,500.00 exemption. In her plan, which in its current form is premised on the $43,000.00 exemption, she proposes to make payments of $220.00 per month for a minimum of 36 months and to pay general unsecured claims a "0.00% dividend or a pro rata share of $1,631.10, whichever is greater." (Dckt. 6, p. 1, ¶¶ 2(a), 4(h)). If her homestead exemption is limited to $21,500.00, however, she would need to amend her plan to pay creditors an additional $23,220.10, per the Trustee's calculations.[1] (Dckt. 30, p. 5). She acknowledges that she would not be able to afford

---

[1] Under the Bankruptcy Code's Chapter 13 "best interest of creditors" test, "the value . . . of property to be distributed under [a] plan on account of each allowed unsecured claim" must not be "less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7[.]" 11 U.S.C. § 1325(a)(4). "In essence, this section requires that for a Chapter 13 case to be confirmed, unsecured creditors must receive as much in the Chapter 13 as they would in a hypothetical Chapter 7 liquidation case." *In re Locklear*, 386 B.R. 911, 913 (Bankr. S.D. Ga.

2

those increased plan payments, and her plan would be infeasible and thus unconfirmable.[2]

The nature of the Debtor's partial interest in the residence, and the status of her father's probate estate through which she will ultimately gain that interest, complicate the analysis of her claimed $43,000.00 double homestead exemption. But in the end, the Court rejects the Trustee's arguments and finds that the Debtor is entitled to claim the $43,000.00 exemption under Georgia's exemption statute. The Court will therefore overrule the Trustee's objection to confirmation and will confirm the Debtor's plan absent any other objections.

## I. __Jurisdiction__

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(B). The Court makes the following findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, made applicable to this

---

2007) (Davis, J.). In a Chapter 7 case, a trustee would sell the Debtor's interest in the real property and distribute to unsecured creditors the proceeds from the non-exempt portion of the Debtor's interest. To meet the best interest test, then, the Debtor must make plan payments commensurate with the value of her non-exempt interest in the real property.

[2] *See* 11 U.S.C. § 1325(a)(6).

matter by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II. Findings of Fact

The parties in this case do not dispute any material facts. The Debtor testified at the May 20, 2024 hearing, and at the August 26, 2024 hearing the parties stipulated to the authenticity of all exhibits submitted by the Debtor. (August 26, 2024 Tr.[3] at pp. 4, 7-8). Additionally, under Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of its docket in this case. *See Lodge v. Kondaur Cap. Corp.*, 750 F.3d 1263, 1273 (11th Cir. 2014) ("Under Rule 201 of the Federal Rules of Evidence, a court 'may take judicial notice on its own'" at any stage of a proceeding).

The Debtor's father, T.D. Bragg, owned real property commonly known as 2495 Indian Trail Road, Sylvania, Georgia 30467. (May 20, 2024 Tr. at p. 5; August 26, 2024 Tr. at pp. 18-19). The real property comprises 75 acres and includes a 1,400-square-foot house and a storage shed. (May 20, 2024 Tr. at pp. 5-6, 9; August 26, 2024 Tr. at pp. 12, 16). As evidenced by the Screven County Tax Assessor's valuation, the real property is not subdivided. (Exhibit "B," August 26, 2024 Tr. at pp. 12-16).

---

[3] The Court will use the abbreviation "Tr." to refer to the transcripts of the May 20, 2024 hearing and the August 26, 2024 hearing. (Dckt. 35, 37).

4

The Debtor's father executed his last will and testament on July 15, 1987. (Dckt. 29, p. 10). In that will, he provided for the following disposition of his real property:

> I give, devise and bequeath to my wife, Louise C. Bragg, if living, a life estate in all real property which I may own at the time of my death; with remainder to our four (4) children, Raleigh Daniel Bragg, Charles Edward Bragg, Lois Bragg Murray and Earnest Dean Bragg, in fee simple, share and share alike, with the share of any deceased child passing to their respective children per stirpes. I desire that, upon the sale of real property by any of my heirs, first option to purchase be given to my other children.

(Dckt. 29, p. 9). Louise C. Bragg, the Debtor's mother, died in 1988. (August 26, 2024 Tr. at pp. 10-11). Eight years later, on September 25, 1996, the Debtor's father died. (Dckt. 29, p. 3; May 20, 2024 Tr. at p. 4).

After their father's death, the Debtor's brother, Earnest Dean Bragg, prepared a petition to probate the will in solemn form, and in October 1996 all four siblings signed an acknowledgement of service and assent to probate. (Dckt. 29, pp. 3-5; May 20, 2024 Tr. at p. 12). On November 15, 1996, Earnest filed the petition in the Probate Court of Screven County, Georgia, and on that same day Judge Debbie B. Wells issued an order finding the will legally proven in solemn form and naming Earnest as executor of the father's estate. (Dckt. 29, p. 6; May 20, 2024 Tr. at pp. 4-5; August 26, 2024 Tr. at pp. 8-9). Nothing further has taken place in the probate case in 28 years. (May 20, 2024 Tr. at p. 10; August 26, 2024 Tr. at pp. 9, 17-18).

5

In 1999, three years after her father's death, the Debtor and her husband moved into the home at 2495 Indian Trail Road. (May 20, 2024 Tr. at p. 5). They have lived there continuously for twenty-five years, to the present day. (May 20, 2024 Tr. at p. 5; August 26, 2024 Tr. at p. 11). The Debtor's husband keeps the property in good repair and mows the grass. (May 20, 2024 Tr. at pp. 6, 11). The home is not insured. (May 20, 2024 Tr. at pp. 6, 11). According to the Debtor, she and her husband pay 1/4 of the property taxes, and the other family members each pay their share as well. (May 20, 2024 Tr. at p. 6; August 26, 2024 Tr. at pp. 13-14). As executor of the father's estate, Earnest does not object to the Debtor and her husband residing in the home. (August 26, 2024 Tr. at p. 12).

Since their father's death, two of the Debtor's brothers, Raleigh Daniel and Charles Edward, have themselves died, leaving the Debtor and her brother Earnest as the father's only surviving children. (May 20, 2024 Tr. at p. 4; August 26, 2024 Tr. at p. 10). The parties agree that under the father's will the Debtor has only a 1/4 interest in the real property, with the remaining 3/4 split among Earnest, the estate of Raleigh Daniel, and the estate of Charles Edward.[4] (Dckt. 30, p. 4, ℙ 5; May 20,

---

[4] The Debtor testified that her father specifically left her "the quarter [of the real property] with the house on it," but nothing in the will, or anywhere else in the record, supports that notion. (August 26, 2024 Tr. at p. 12).

2024 Tr. at pp. 4, 8, 12-13). The property records continue to name the Debtor's father as holder of title.[5] (Dckt. 12, p. 1; May 20, 2024 Tr. at p. 10).

The Debtor filed a Chapter 13 petition commencing this case on October 11, 2023. (Dckt. 1). In her Schedule A/B, she listed the real property at 2495 Indian Trail Road, stating that the then-current value of the real property was $187,370.00 and that the value of the portion she owned was $46,842.50.[6] (Dckt. 1, p. 8, ℙ 1.1). On the line for providing additional information, she included the notation "[r]esidence, tax value – PAID FOR – 1/4 interest – debtor has 3 siblings[.]" (Dckt. 1, p. 8, ℙ 1.1). In her Schedule D, she listed no secured creditors—no mortgages or other liens encumber the real property. (Dckt. 1, p. 15; May 20, 2024 Tr. at pp. 10-11).

In her Schedule C, the Debtor claimed a $43,000.00 double exemption in the real property under O.C.G.A. § 44-13-100(a)(1). (Dckt. 1, p. 13, ℙ 2). On December 13, 2023, the Chapter 13 Trustee objected to confirmation of the Debtor's plan. (Dckt. 12). Among other things, the Trustee objected to the Debtor's claimed $43,000.00 exemption. Specifically, the Trustee stated as follows:

> The Trustee objects to the claim of exempt property set forth in the Debtor's Schedule C. Debtor's Schedule C utilizes O.C.G.A. § 44-13-100(a)(1) to exempt an

---

[5] On May 2, 2017, Elizabeth P. Reynolds, the wife of the Debtor's brother Charles Edward Bragg, quitclaimed any interest she had in the real property to her son Tommy Edward Bragg. (Exhibit "B"; August 26, 2024 Tr. at pp. 19-20). The Debtor testified that Elizabeth had no interest to give. (August 26, 2024 Tr. at p. 20).

[6] According to the Screven County Tax Assessor, the real property's land value is $156,000.00, and its total value is $187,370.00. (Exhibit "B"; August 26, 2024 Tr. at p. 14).

> ownership interest in real property located at 2495 Indian Trail Road in Sylvania, Georgia 30467, in the amount of $43,000.00 . . . .
>
> Here, the "double exemption" does not apply. The title to the property is not owned solely by one of the spouses. The Debtor testified that the residence was inherited from her deceased father, [of] which she shares ownership with her three siblings. Based on the property records the property appears to still be titled in the name of the Debtor's father. Accordingly, the home is not titled in "one of two spouses who is a debtor". Therefore, the Debtor is limited to a $21,500.00 exemption under O.C.G.A. § 44-13-100(a)(1).

(Dckt. 12). In other words, the Trustee argues that the Debtor is not entitled to claim the double exemption for two reasons: first, because title to the real property remains in her late father and, second, because she has at most a fractional interest. As the parties continued to debate the application of the Georgia exemption statute, the Trustee made the additional argument that the double exemption's purpose is to protect from creditors a non-filing spouse's equitable interest in a residence and that under Georgia domestic relations law the Debtor's husband has no equitable interest to protect. (Dckt. 24, pp. 3-6; Dckt. 30, pp. 3-5). For her part, the Debtor argues that she has a sufficient ownership interest to claim the double exemption. (Dckt. 20, 29).

This case came on for confirmation on December 18, 2023. (Dckt. 7, p. 2, ¶ 9). But due to the dispute over the Debtor's claimed double exemption, the hearing was continued four times. (Dckt. 14, 18, 22, 27). At a continued hearing on May 20, 2024, the Court heard testimony from the Debtor. (May 20, 2024 Tr. at pp. 24, 27,

8

31). And at a continued hearing on August 26, 2024, the parties made stipulations of fact and the Court admitted documents into the record.[7] At that hearing's conclusion, the Court took the matter under advisement. (August 26, 2024 Tr. at p. 21). Transcripts of the May 20, 2024 hearing and of the August 26, 2024 hearing appear on the docket. (Dckt. 35, 37). This matter is now ripe for ruling.

## III. <u>Conclusions of Law</u>

Filing a bankruptcy petition "creates an estate" that, with some exceptions, comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." *City of Chicago, Ill. v. Fulton*, 592 U.S. 154, 156 (2021) (quoting 11 U.S.C. § 541(a)(1)). Although the Bankruptcy Code is a federal statute, bankruptcy courts must look to state law to determine the nature of a debtor's property rights. *See Barnhill v. Johnson*, 503 U.S. 393, 398 (1992) ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law."); *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."). Importantly, "Congress intended a broad range

---

[7] Specifically, the parties stipulated to the authenticity of the father's will and of the probate documents attached to the Debtor's supplemental response at Dckt. 29. (August 26, 2024 Tr. at pp. 4, 7-8). Those probate documents include the petition to probate the will in solemn form signed by the Debtor and her siblings, an acknowledgement of service and assent to probate instanter, the probate court's order appointing Earnest Dean Bragg as executor of the estate, Earnest Dean Bragg's application affirming that he witnessed the will's execution, and letters testamentary issued by the probate court. The Court also admitted into evidence the 2023 Screven County Tax Assessor's valuation of the real property, also on the parties' stipulation. (Dckt. 33; August 26, 2024 Tr. at pp. 14-16).

9

of property to be included in the estate." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983). As will be seen, the estate includes property that a debtor inherits pre-petition[8] even though title has not yet been transferred to the debtor.

The Bankruptcy Code "authorizes the debtor to 'exempt,' . . . certain kinds of property from the estate, enabling him to retain those assets post-bankruptcy." *Law v. Siegel*, 571 U.S. 415, 417 (2014) (quoting 11 U.S.C. § 522(b)(1)). In Georgia, debtors may claim exemptions only under the Georgia exemption statute, O.C.G.A. § 44-13-100(a). One of the exemptions permitted in Georgia is for a debtor's homestead. Under the Georgia homestead exemption, a debtor may exempt her "aggregate interest, not to exceed $21,500.00 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence[.]" O.C.G.A. § 44-13-100(a). And "[i]n the event title to property used for the [homestead exemption] is in one of two spouses who is a debtor, the amount of the exemption hereunder shall be $43,000.00[.]" *Id.*

Here, the Debtor has claimed a $43,000.00 double exemption in the real property devised to her, and to her three siblings, by their late father. The Trustee does not dispute that the Debtor uses the property as her residence. Nor does he

---

[8] The bankruptcy estate also includes "[a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date . . . by bequest, devise, or inheritance[.]" 11 U.S.C. § 541(a)(5).

dispute that the Debtor is entitled to a $21,500.00 homestead exemption. Instead, the Trustee makes essentially two arguments. First, he argues that the plain language of the Georgia exemption statute prevents the Debtor from claiming the double exemption because she has only a partial ownership interest in the residence. Second, he argues that the purpose of the double exemption statute—which, he says, is to protect a debtor's non-filing spouse's equitable interest in a residence—is not implicated here because the Debtor's husband has no equitable interest to protect. The Court disagrees with the Trustee and will permit the Debtor to claim the $43,000.00 double exemption.

A. The Homestead Exemption Protects a Debtor's Fresh Start

The Supreme Court has long recognized that "[o]ne of the 'main purpose[s]' of the federal bankruptcy system is 'to aid the unfortunate debtor by giving him a fresh start in life[.]'" *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 715 (2018) (quoting *Stellwagen v. Clum*, 245 U.S. 605, 617 (1918)). To that end, the Bankruptcy Code permits a debtor to exempt certain property from the claims of creditors. As the Supreme Court has put it, "exemptions in bankruptcy cases are part and parcel of the fundamental bankruptcy concept of a 'fresh start.'" *Schwab v. Reilly*, 560 U.S. 770, 791 (2010).

For that reason, courts construe exemptions liberally in favor of debtors. *McFarland v. Wallace (In re McFarland)*, 790 F.3d 1182, 1186 (11th Cir. 2015).

11

The Bankruptcy Code makes a debtor's claimed exemptions presumptively valid unless a party in interest objects. 11 U.S.C. § 522(l). Under Bankruptcy Rule 4003(c), the party objecting to a debtor's claimed exemptions "has the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr. P. 4003(c). The objecting party must make that showing by a preponderance of evidence. *McFarland*, 790 F.3d at 1186.

Section 522(b)(1) of the Bankruptcy Code provides that "an individual debtor may exempt from property of the estate the property listed in" § 522(b)(2). 11 U.S.C. § 522(b)(1). In turn, § 522(b)(2) defines exemptible property as "property that is specified" in § 522(d), which lists categories of property that a debtor may claim as exempt, "unless the State law that is applicable to the debtor . . . specifically does not so authorize." 11 U.S.C. § 522(b)(2). In other words, States may opt out of the federal exemption scheme. *McFarland*, 790 F.3d at 1185. The State of Georgia has opted out, prohibiting "an individual debtor whose domicile is in Georgia . . . from applying or utilizing 11 U.S.C. Section 522(d) in connection with exempting property from his or her estate[.]" O.C.G.A. § 44-13-100(b). Instead, Georgia debtors must use the Georgia exemptions codified at O.C.G.A. § 44-13-100(a). The parties agree that the Debtor in this case may claim exemptions only under the Georgia exemption statute.

Perhaps the most important exemption is the homestead exemption. A debtor's "home is typically [the debtor's] most valuable and necessary asset." *In re White*, 659 B.R. 68, 84 (Bankr. D.S.C. 2024). "The great majority of states," therefore, "have enacted homestead exemption laws." Hon. William Houston Brown, Lawrence R. Ahern, III, and Christopher M. Cahill, *The Law of Debtors and Creditors: Bankruptcy, Security Interests, Collection* § 6:72 (2024 ed.). The homestead exemption "further[s] the government's interest in protecting the debtor and the debtor's dependents by preserving their interest in their home." *In re Withington*, 594 B.R. 696, 706 (Bankr. D. Colo. 2018). *See also In re Turnage*, 644 B.R. 656, 662 (Bankr. W.D.N.C. 2022) (noting homestead exemption's importance "in providing shelter to debtors and their families"); *In re Page*, 289 B.R. 484, 485 (Bankr. S.D. Ga. 2003) (Walker, J.) ("[T]he purpose of an exemption in a debtor's residence is 'that a debtor and his dependents not be left without shelter.'").

B. The Debtor Uses the Real Property as Her Residence

As amended in 2012, Georgia's exemption statute permits a debtor to claim a $21,500.00 homestead exemption and, in some circumstances, to claim a $43,000.00 double homestead exemption, in her residence.[9] The Georgia homestead exemption provision states as follows:

---

[9] Previously, Georgia limited the homestead exemption to $10,000.00 and limited the double exemption to $20,000.00. In 2012, the General Assembly passed S.B. No. 117 increasing those

13

> (a) In lieu of the exemption provided in Code Section 44-13-1, any debtor who is a natural person may exempt, pursuant to this article, for purposes of bankruptcy, the following property:
>
>> (1) The debtor's aggregate interest, not to exceed $21,500.00 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor. In the event title to property used for the exemption provided under this paragraph is in one of two spouses who is a debtor, the amount of the exemption hereunder shall be $43,000.00[.]

O.C.G.A. § 44-13-100(a)(1).[10] Thus, as a starting point, the homestead exemption at issue here "requires that the property claimed as exempt," whether real property or personal property, "be used as [the] Debtor's residence."[11] *Page*, 289 B.R. at 485.

Courts interpreting the analogous federal homestead exemption of 11 U.S.C. § 522(d)(1) have explained that "'[w]hether real property constitutes a "residence" is dependent upon the facts presented.'" *In re Stoner*, 487 B.R. 410, 415 (Bankr. D.N.J. 2013) (quoting *In re Tomko*, 87 B.R. 372, 375 (Bankr. E.D. Pa. 1988)). In Georgia, the inquiry "ultimately hinge[s] on how the debtor[] use[s] the property."

---

figures to $21,500.00 and $43,000.00, respectively. *See* 2012 Ga. Laws 722; Georgia General Assembly, *SB 117*, https://www.legis.ga.gov/legislation/32896.

[10] Georgia's exemptions also apply in the context of levies and sales. *See* O.C.G.A. § 44-13-21.

[11] This case does not involve property owned by a cooperative or a burial plot. Nor does it involve property used as a residence by a dependent of the Debtor.

14

*In re Vaughn*, No. 13-13062-WHD, 2014 WL 2006594, at *3 (Bankr. N.D. Ga. Apr. 30, 2014) (Drake, J.). For example, a debtor cannot claim a homestead exemption in a rental property located on land contiguous to her homestead, in proceeds from the pre-petition sale of her property, or in a mere security interest in realty. *See In re Holt*, 357 B.R. 917, 923-24 (Bankr. M.D. Ga. 2006) (Laney, J.) (rental property); *Lubin v. Mason (In re Mason)*, 607 B.R. 360, 365 (Bankr. N.D. Ga. 2019) (Baisier, J.) (sales proceeds); *Page*, 289 B.R. at 485 (security interest).[12]

Here, the Debtor claims an exemption in real property commonly known as 2495 Indian Trail Road, Sylvania, Georgia 30467. She testified that she and her husband have lived there for 25 years, that they maintain the property, and that they pay their share of property taxes. At no point has the Trustee disputed that the Debtor uses the real property as her personal residence. And based on the Debtor's uncontroverted testimony, the Court finds that the residence requirement of O.C.G.A. § 44-13-100(a)(1) is satisfied here.

---

[12] Under the analogous federal homestead exemption provision of § 522(d)(1), at least one bankruptcy court has held that a debtor's interest in a timeshare is not exemptible. *See In re Brown*, 299 B.R. 425 (Bankr. N.D. Tex. 2003). In *Brown*, the debtors lived on a Texas military base but sought to exempt their interest in a Florida timeshare that they used as a vacation home for no more than two weeks per year. The court found that "[s]uch a limited occupancy, coupled with the lack of intent or ability to use the timeshare as a permanent residence," rendered the debtors' interest non-exemptible. *Id.* at 428.

C. <u>The Debtor Has an Exemptible Interest in the Homestead</u>

Rather than challenging the Debtor's use of the real property as her residence, the Trustee has focused instead on the nature of the Debtor's interest in the homestead. To exempt her "aggregate interest" in the homestead under O.C.G.A. § 44-13-100(a)(1), the Debtor must have an exemptible interest. Throughout this case, the Trustee has consistently acknowledged that the Debtor has such an interest in the homestead and therefore is entitled to claim a $21,500.00 exemption. (Dckt. 12, p. 1; Dckt. 24, p. 2; Dckt. 30, p. 5; May 20, 2024 Tr. at pp. 14-15). What the Trustee opposes is the Debtor's attempt to claim the $43,000.00 double homestead exemption. Because the double exemption provision requires that "title to property used for the [homestead] exemption" be "in one of two spouses who is a debtor," the parties initially framed the issue as a question of whether the Debtor has *title* to the real property.[13] As more factual information has come to light, both parties' positions have evolved, and they now appear to agree that the Debtor has an exemptible ownership interest. The Court agrees: the Debtor has inchoate title to the real property, and this constitutes an exemptible interest under O.C.G.A. § 44-13-100(a)(1).

---

[13] As used in the exemption statute, "the term 'title' signifies the means whereby a person's right to property is established." O.C.G.A. § 44-1-5.

Initially, the Trustee argued that the Debtor had only an *equitable* interest in the real property because "[b]ased on the property records the property appears to still be titled in the name of the Debtor's father[.]" (Dckt. 12, p. 1; May 20, 2024 Tr. at pp. 14-19). In response, the Debtor argued that title (i.e. of her 1/4 share) vested in her when her father died. (Dckt. 20, p. 1). In support she cited the Georgia intestate succession statute O.C.G.A. § 53-2-7. (Dckt. 20, p. 1). Under that statute, "[u]pon the death of an *intestate* decedent who is the owner of any interest in real property, the title to any such interest which survives the intestate decedent shall vest immediately in the decedent's heirs at law[.]" O.C.G.A. § 53-2-7(a) (emphasis added).

At the May 20, 2024 hearing, the Debtor testified that her father died with a will. The Trustee then argued that the intestacy statute O.C.G.A. § 53-2-7 did not apply. (Dckt. 30, p. 1, ¶ 1). On this point the Court agrees with the Trustee. O.C.G.A. § 53-2-7(a) plainly applies only to an intestate decedent—one who "dies without a valid will or whose property is not disposed of completely by the will." Mary F. Radford, *Redfearn Wills and Administration in Georgia* § 9:1 (2023 ed.).

Realizing that O.C.G.A. § 53-2-7 would be unavailing, the Debtor pivoted to O.C.G.A. § 53-8-15, which provides that title to property in a probate estate vests in the estate's personal representative and "does not pass to the heirs or beneficiaries until the personal representative assents thereto[.]" O.C.G.A. § 53-8-15(a). Assent

17

"may be express or may be presumed from the conduct of the personal representative[.]" O.C.G.A. § 53-8-15(b). The Debtor argued that her brother Earnest, as administrator of their father's estate, has impliedly assented to passage of title because he has taken no further action in the probate case in 28 years. (Dckt. 29, p. 2). In response, the Trustee cited language from Georgia case law suggesting that a personal representative's assent "must still be proven by court proceeding" to quiet title.[14] (Dckt. 30, p. 2, ₱ 2). But at the same time, the Trustee appeared to acknowledge that the Debtor *does* have an ownership interest in the homestead, stating that "[t]he will and possession of the property by the Debtor give[] her an undeniable ownership interest in the property," and "[i]n the present case the Debtor holds title to the property with her siblings[.]" (Dckt. 30, pp. 2-3, ₱₱ 2-3).

The Court finds that the Debtor's right to exempt her interest in the real property does not depend on the status of the deed in probate. By its terms, the first sentence of O.C.G.A. § 44-13-100(a)(1) permits a debtor to exempt her "aggregate interest" in "real property or personal property that the debtor or a dependent of the debtor uses as a residence[.]" O.C.G.A. § 44-13-100(a)(1). Notably, the word "title" does not appear in that sentence. Instead, the statute uses the term "aggregate

---

[14] *See Crippen & Lawrence Inv. Co., Inc. v. A Tract of Land Being Known as 444 Lemon Street et al.*, 310 Ga. 171, 174 (2020).

interest." That term is not defined in the Georgia exemption statute[15] or in Georgia case law.[16] But in interpreting the meaning of the word "interest" in the Georgia exemption statute, the Eleventh Circuit has explained that "[t]he word 'interest' is a broad term encompassing many rights of a party, tangible, intangible, legal and equitable[.]" *Maddox v. S. Discount Co. (In re Maddox)*, 713 F.2d 1526, 1530 (11th Cir. 1983).[17]

Based on that Eleventh Circuit precedent, and on other persuasive authority, Judge Dalis concluded that "[a] debtor's aggregate interest in property" for purposes of O.C.G.A. § 44-13-100(a)(1) "is not limited to his equity, but also includes the right to possession, the equity of redemption and the right to create future equity by making mortgage payments." *Cravey v. L'Eggs Prods., Inc. (In re Cravey)*, 100 B.R. 119, 122 (Bankr. S.D. Ga. 1989) (Dalis, J.). In *Cravey*, the debtors sought to avoid judicial liens, and the judgment creditors objected to their claimed homestead

---

[15] The term "aggregate interest" also appears in the federal homestead exemption. *See* 11 U.S.C. § 522(d)(1). Like the Georgia exemption statute, the Bankruptcy Code does not define the term "aggregate interest" for purposes of the homestead exemption. *In re Fink*, 417 B.R. 786, 790 (Bankr. E.D. Wis. 2009).

[16] The only relevant guidance given by Georgia courts comes from the Court of Appeals of Georgia, which stopped short of a complete definition but explained that "aggregate interest" means "that 'only the unencumbered portion of the property is to be counted in computing the "value" of the property for the purposes of determining the exemption.'" *Wallis v. Clerk, Superior Court of DeKalb Cnty.*, 166 Ga. App. 775 (1983).

[17] Specifically, in *Maddox* the Eleventh Circuit interpreted the meaning of the word "interest" for purposes of Georgia's household goods exemption, which now appears at O.C.G.A. § 44-13-100(a)(4).

exemption. Specifically, the creditors argued that the debtors did not have an exemptible interest because they conveyed legal title to the mortgage creditor. Judge Dalis overruled the objection, finding that "the objecting creditors too narrowly define[d] the term 'interest'" and holding that "[t]he debtors [did] possess an interest in their residence which is exemptible under the Georgia exemption statute." *Id.* at 121-22.

So too here. In his will the Debtor's father left a life estate in the real property to his wife, who predeceased him, with the remainder in fee simple to their four children. The inexplicable delay in administering the father's estate does not deprive the Debtor of an exemptible interest. "During administration of the testate estate and prior to [the personal representative's] assent, the beneficiaries have inchoate title[.]" *Redfearn Wills and Administration in Georgia* § 12:5. *See also Williams v. Williams*, 236 Ga. 133, 135 (1976) ("In the testamentary disposition of realty, 'upon the death of the owner of realty . . . the devisees have an inchoate title in the realty which is perfected when the executor assents to the devises.'"); *Hollberg v. Spalding Cnty.*, 281 Ga. App. 768, 773-74 (2006) ("Even though [a] right is inchoate rather than vested, it is a legal right that will be protected."). The Debtor's inchoate title to the real property is part of her bankruptcy estate under § 541(a)(1) of the Bankruptcy Code. *See Moore v. Ga. United Credit Union*, No. 4:20-cv-172, 2021 WL 1178055, at *5-6 (S.D. Ga. March 29, 2021) (Baker, J.). *See also Webster v. Cape (In re Lary)*,

20

338 B.R. 141, 146 (Bankr. M.D. Ga. 2006) (Hershner, C.J.) (Debtor's "inchoate title to the residence was property of her bankruptcy estate"). The Court thus finds that the Debtor has inchoate title to the residence and is entitled to exempt that interest under O.C.G.A. § 44-13-100(a)(1). But that is not the end of the dispute. The additional problem, from the Trustee's perspective, is that the Debtor's interest in the residence is only a partial interest.

D. The Double Homestead Exemption Does Not Require Sole Ownership

Having correctly acknowledged that the Debtor has an ownership interest in the residence, the Trustee reframed the dispute as a question of whether O.C.G.A. § 44-13-100(a)(1) requires, as a condition of claiming the double exemption, *sole* ownership of the homestead where, as here, only one spouse has filed for bankruptcy. According to the Trustee, O.C.G.A. § 44-13-100(a)(1) "specifically note[s] that title to the property must be *solely* in one spouse's name." (Dckt. 30, p. 2, ⁋ 3) (emphasis in original). Thus, the Trustee contends, "the spouse in the bankruptcy case must be the sole individual holding title to the property in order for the double exemption to apply." (Dckt. 30, p. 2, ⁋ 3). Because "the Debtor holds title to the property with her siblings," the Trustee argues she is "not eligible for the double exemption[.]" (Dckt. 30, p. 3, ⁋ 3).

Thus, the question before the Court is whether O.C.G.A. § 44-13-100(a)(1) requires sole ownership of the homestead or permits a debtor with only a partial

interest to claim the double exemption. Answering that question requires scrutinizing the Georgia exemption statute's text to determine the General Assembly's intent. *See* O.C.G.A. § 1-3-1(a) ("In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy."). Statutory language must be given its "ordinary signification." O.C.G.A. § 1-3-1(b). And courts must "presume that the General Assembly meant what it said and said what it meant." *S. States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 316 Ga. 701, 713 (2023).

As mentioned, the Georgia homestead exemption provision comprises two sentences. The first provides that a debtor may exempt "[t]he debtor's aggregate interest, not to exceed $21,500.00 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence[.]" O.C.G.A. § 44-13-100(a)(1). The second sentence, which is at issue here, provides that "[i]n the event title to property used for the exemption provided under this paragraph is in one of two spouses who is a debtor, the amount of the exemption hereunder shall be $43,000.00[.]" *Id.* The General Assembly added the second sentence creating the double exemption when it amended O.C.G.A. § 44-13-100(a)(1) in 2001.[18]

---

[18] For the history of the 2001 amendment, *see* John Dyer, *Property: Homestead and Exemptions: Change the Provisions Relating to Exemptions for Purposes of Bankruptcy and Intestate Insolvent Estates; Change the Amounts of Certain Exemptions; Provide for Calculation of the Amounts of Certain Exemptions and the Standards, Practices, and Procedures Connected Therewith; Provide for the Duties of the Administrator of the Governor's Office of Consumer Affairs*, 18 Ga. St. U. L. Rev 263 (Fall 2001).

In opposing the Debtor's claimed $43,000.00 double exemption, the Trustee contends that the plain language of O.C.G.A. § 44-13-100(a)(1) requires that the homestead be titled solely in the Debtor's name. The Trustee purports to rely on the plain text of O.C.G.A. § 44-13-100(a)(1), stating that "the statute does specifically note that title to the property must be *solely* in one spouse's name." (Dckt. 30, p. 2, ¶ 3) (emphasis in original). Thus, he contends, "[b]ased on [a] plain reading of the statute it would appear that the spouse in the bankruptcy case must be the sole individual holding title to the property in order for the double exemption to apply." (Dckt. 30, p. 2, ¶ 3). He adds that "[b]ankruptcy courts in Georgia have consistently held that the last sentence of O.C.G.A. § 44-13-100(a)(1) permits a debtor to double the [homestead exemption] only where the debtor is married and home is titled *solely* in a filing spouse's name." (Dckt. 30, p. 2, ¶ 3) (emphasis in original).

The Trustee is wrong: nothing in O.C.G.A. § 44-13-100(a)(1) requires the debtor to have sole title to the homestead to claim the double exemption. By its terms, the statute requires only that "title to property used for the [homestead] exemption" be "in one of two spouses who is a debtor." O.C.G.A. § 44-13-100(a)(1). Contrary to the Trustee's assertion, the word "solely" does not appear anywhere in the homestead exemption provision, and the Court will not read that word into the statutory text.

23

What the statute *does* say is that title must be in the debtor as opposed to the debtor's non-filing spouse. Judge Walker so held in the case *In re Burnett*, 303 B.R. 684, 686 (Bankr. M.D. Ga. 2003) (Walker, J.). There, the debtor was married, but his wife had no ownership interest in the residence—the debtor had sole title. In his Chapter 7 case, the debtor sought to avoid a judicial lien under § 522(f) as impairing his claimed exemptions.[19] The judgment creditor objected, arguing that the debtor improperly claimed the double exemption. According to the judgment creditor, "the Georgia General Assembly intended the [double] exemption to apply when the house is titled in one spouse but the spouses file *joint* bankruptcy." *Burnett*, 303 B.R. at 686. Judge Walker rejected the judgment creditor's interpretation, stating as follows:

> According to [the exemption statute's] language, in the case of spouses, if the residence is titled in only one spouse and that spouse is a bankruptcy debtor, he is entitled to a [double] exemption. The sentence uses the phrase "who is a debtor," which uses a singular verb, rather than the plural form "who are debtors," so that it refers to the "one" spouse holding title. In other words, the spouse holding title must be a bankruptcy debtor in order to take advantage of the [double] exemption, but the statute imposes no requirement that the non-titled spouse also be in bankruptcy.

---

[19] Under § 522(f), a "debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is . . . a judicial lien[.]" 11 U.S.C. § 522(f).

*Id.* For that reason, Judge Walker found that "[b]ased on the plain language of O.C.G.A. § 44–13–100(a)(1)," the debtor was "entitled to [the double] homestead exemption[.]" *Id.* at 687.

The Trustee relies on Judge Walker's language in *Burnett* to support his reading of O.C.G.A. § 44–13–100(a)(1) that "title [to the residence] must be in *only* one spouse," so that the Debtor cannot claim the double exemption because she "holds title to the property with her siblings[.]" (Dckt. 30, p. 3, ¶ 3). But Judge Walker was simply distinguishing between a scenario in which the one spouse who holds title is a bankruptcy debtor (the facts of *Burnett*, and the facts of this case) and a scenario in which *both* spouses are bankruptcy debtors (which the judgment creditor argued, unsuccessfully, was the only scenario permitting the double exemption). Nothing in *Burnett* suggests that the statute forecloses a debtor who shares title with her siblings from claiming the double exemption.[20]

Courts disagree as to whether the language of O.C.G.A. § 44–13–100(a)(1) is ambiguous. In Judge Walker's view, the statutory text is clear, not "ambiguous, vague, or otherwise uncertain." *Burnett*, 303 B.R. at 687. *See also In re Green*, 319 B.R. 913, 915 (Bankr. M.D. Ga. 2004) (Walker, J.) ("The sentence in question

---

[20] Likewise, when other bankruptcy courts have used language similar to Judge Walker's, they have meant only that the double exemption requires title to be in the spouse who has filed for bankruptcy as opposed to the non-filing spouse. *See, e.g., Mann v. Burroughs (Matter of Burroughs)*, No. 14-12573-WHD, 2015 WL 1523485, at *2 (Bankr. N.D. Ga. Apr. 1, 2015) (Drake, J.), *Wright v. Taylor (In re Taylor)*, 320 B.R. 214, 217 (Bankr. N.D. Ga. 2005) (Mullins, J.).

25

contains no grammatical errors and dictates a clear standard for application in this case."). For his part, Judge Mullins found that "the phrase 'in one of two spouses who is a debtor' in the last sentence" of O.C.G.A. § 44-13-100(a)(1) was "not entirely clear" and was "somewhat vague[.]" *Wright v. Taylor (In re Taylor)*, 320 B.R. 214, 218 (Bankr. N.D. Ga. 2005) (Mullins, J.). In the Court's view, the statute is awkwardly worded, but it is not ambiguous. Its plain language permits a married debtor to claim the double exemption in real property that she (or a dependent) uses as a residence even if she has only a partial interest in that real property.

E. The Double Exemption Does Not Depend on a Non-Filing Spouse Having an Equitable Interest

Because the plain language of O.C.G.A. § 44–13–100(a)(1) cuts so clearly against his position and in the Debtor's favor, the Trustee argues that allowing the double exemption here would violate the statute's purpose, thereby unjustly enriching the Debtor. The Trustee's argument has two premises. First, he argues that the purpose of the double exemption is "to protect the non-filing spouse's equitable interest from the [d]ebtor's creditors." (Dckt. 24, p. 5). Second, he cites Georgia domestic relations law for the proposition that the Debtor's husband has no equitable

26

interest in the real property to protect.[21] (May 20, 2024 Tr. at pp. 22-23). As the Trustee puts it:

> [S]hould the double exemption set forth in O.C.G.A. § 44-13-100(a)(1) be applied as the Debtor suggests, it would constitute unjust enrichment as the Debtor would essentially be given the double exemption of $43,000.00 to protect the equitable interest of the non-filing spouse, even though the non-filing spouse would have no interest in the property if it was sold, or upon death of the Debtor, or dissolution of the marriage of the Debtor and non-filing spouse.

(Dckt. 30, p. 3, ¶ 4). The Court disagrees.

It's true that several bankruptcy courts have inferred that the Georgia General Assembly created the double exemption to protect from the debtor's creditors a non-filing spouse's equitable interest. The first to do so was Judge Diehl in *In re Neary*, No. 03-97808, 2004 WL 3222872, at *2 (Bankr. N.D. Ga. Apr. 21, 2004) (Diehl, J.). In *Neary*, the debtor was the sole owner of her residence. When she filed her Chapter

---

[21] Georgia law recognizes both marital property subject to equitable division and separate property not subject to equitable division. *See, e.g., Stokes v. Stokes*, 246 Ga. 765 (1980). *See also* David A. Webster and Deborah A. Johnson, *McConaughey's Georgia Divorce, Alimony and Child Custody* § 12:3 (2024 ed.). "The equitable division of property is an allocation to the parties of the assets acquired during the marriage, based on the parties' respective equitable interests." *Payson v. Payson*, 274 Ga. 231 (2001). Its purpose is "to assure that property accumulated during the marriage be fairly distributed between the parties." *Id.* at 232 (quoting *Campbell v. Campbell*, 255 Ga. 461, 462 (1986)). The Trustee recites, correctly, that in Georgia, "[a] property interest brought to the marriage by one of the marriage partners is a non-marital asset and is not subject to equitable division since it was in no sense generated by the marriage." *Payson*, 274 Ga. at 232. And "property acquired during the marriage by either party by gift, inheritance, bequest or devise remains the separate property of the party that acquired it, and is not subject to equitable division." *Bailey v. Bailey*, 250 Ga. 15 (1982). Here, the Debtor acquired the real property through devise. According to the Trustee, then, the residence is the Debtor's separate property, and her husband has no equitable interest to protect in the Debtor's bankruptcy under O.C.G.A. § 44–13–100(a)(1).

27

7 case, she was separated from her husband, and a divorce action was pending in superior court. Her estranged husband lived in a separate residence. When the debtor claimed the double exemption, the trustee objected, arguing that the debtor should be limited to only the single exemption. The Debtor argued that she was entitled to the double exemption because "she [was] a married person, title to the property [was] solely in her name and she use[d] the property as a residence[.]" *Neary*, 2004 WL 3222872 at *2.

In that context, Judge Diehl, upon considering the amendment's text and legislative history, reasoned that the General Assembly "wanted to ensure that a family unit received the full exemption to which they would be entitled if the property were jointly owned, even under circumstances where the property was titled in only one spouse." *Id.* Judge Diehl then went a step further, stating that "[t]he concern of the legislature in amending O.C.G.A. § 44–13–100(a) was to protect the resident non-debtor spouse's interest in property where only one spouse filed for bankruptcy and property was titled only in the debtor-spouse." *Id.* In Judge Diehl's view, the debtor's estranged husband had "no claim on the residence" because "the debtor had sole title to the home prior to the marriage," and "[n]o evidence was offered as to any increase in value of the property during the marriage or as a result of contributions by the spouses during short marriage." *Id.* at *3. Judge Diehl

28

therefore sustained the trustee's objection and limited the debtor to the single homestead exemption.

The Court respectfully disagrees with Judge Diehl's reasoning in *Neary* and finds that it led to the wrong result in that case. In the Court's view, Judge Diehl improperly read into O.C.G.A. § 44–13–100(a) a requirement that the non-filing spouse have a claim to at least some interest in the subject property in a hypothetical (or even pending) divorce action for the "titled" debtor spouse to claim the double exemption. That requirement appears nowhere in the statutory text. When and how should a determination of such an equitable interest be made by the bankruptcy court? Married couples separate and reconcile all the time. A debtor's entitlement to exemptions is determined as of the petition date.[22]

Moreover, in Georgia, determining in the context of divorce whether an asset is marital property (and thus subject to equitable division) or separate property (not subject to equitable division) can be a complicated, fact-specific question.[23] In

---

[22] "It is settled law that a 'claim of exemption is to be determined as of the petition date.'" *In re Yerian*, 927 F.3d 1223, 1229 (11th Cir. 2019). In *White v. Stump*, 266 U.S. 310 (1924), the Supreme Court stated that "[w]hen the law speaks of property which is exempt and of rights to exemptions, it of course refers to some point of time," and that "the point of time which is to separate the old situation from the new in the bankrupt's affairs is the date when the petition is filed." *Id.* at 313. *See also Lubin v. Mason (In re Mason)*, 607 B.R. 360, 364 (Bankr. N.D. Ga. 2019) (Baisier, J.) ("The Debtor's exemptions are determined at the time of filing of the bankruptcy petition.").

[23] "Whether an item of property can legally constitute a marital asset is a question of law for the court, and whether a particular item of property actually constitutes a marital asset may be a question of fact for the trier of fact to determine from the evidence." *Flory v. Flory*, 298 Ga. 525, 526 (2016) (quoting *Jones-Shaw v. Shaw*, 291 Ga. 252, 252-53 (2012)). "Property that once may have been separate . . . may be converted into a marital asset if a spouse takes action manifesting

29

contrast, the double exemption provision sets forth a straightforward and mechanical test: "[i]n the event title to property used for the [homestead] exemption . . . is in one of two spouses who is a debtor," the debtor may claim the double exemption. O.C.G.A. § 44–13–100(a). "While the determination of the value of [an] equitable interest in [a] state court may be fairly characterized as subjective, the determination of the bankruptcy exemption should be objective, consistent, and predictable from one case to another." *Green*, 319 B.R. at 916. The Court disagrees with Judge Diehl's—and hence the Trustee's—conflation of federal bankruptcy law and Georgia domestic relations law.

Later both Judge Mullins and Judge Drake adopted Judge Diehl's view of the double exemption's purpose. In *Wright v. Taylor (In re Taylor)*, 320 B.R. 214, 218 (Bankr. N.D. Ga. 2005) (Mullins, J.), the residence was titled in both spouses, but only one spouse filed for bankruptcy. The debtor claimed the double homestead exemption, and the Chapter 7 trustee objected because the spouses had *joint* title. Judge Mullins stated that in his view "the General Assembly of Georgia intended to protect the *equitable* interest of a non-debtor spouse in a residence titled in the

---

an intent to transform that separate asset into marital property." *Id.* And "any appreciation of separate property resulting from the efforts of either or both spouses becomes a marital asset subject to equitable division[.]" *Id.* This analysis by a Georgia divorce court often involves the so-called *Thomas* formula set forth in *Thomas v. Thomas*, 259 Ga. 73 (1989). *See Maddox v. Maddox*, 278 Ga. 606, 607 (2004) ("The method of equitable division utilized at trial is the 'source-of-funds' rule which provides that a spouse contributing non-marital property is entitled to an interest in the property in the ratio of the non-marital investment to the total non-marital and marital investment in the property.").

debtor." *Taylor*, 320 B.R. at 219 (emphasis in original). Relying on that purpose, he explained that in his case the debtor's spouse did "not have an equitable interest, but a real and true equity interest that [could not] be reached by the [d]ebtor's creditors." *Taylor*, 320 B.R. at 219. For that reason, Judge Mullins sustained the trustee's objection, holding that "where a debtor and non-debtor spouse have joint title to the residence," the debtor cannot claim the double exemption. *Id.* at 215, 220.

In *Mann v. Burroughs (Matter of Burroughs)*, No. 14-12573-WHD, 2015 WL 1523485, at *2 (Bankr. N.D. Ga. Apr. 1, 2015) (Drake, J.), the Chapter 7 debtor had only a half-interest in his residence, with the other half held by a living trust established for his non-filing spouse. When the debtor claimed a double homestead exemption of $38,475.00, the trustee objected.[24] Citing *Neary* and *Burnett*, Judge Drake stated that "[t]hese holdings are premised on reading the intention of [O.C.G.A. § 44–13–100(a)] as being an attempt to protect the '"equitable interest" of a non-debtor spouse in the residence' from actions taken solely by the [d]ebtor's creditors." *Burroughs*, 2015 WL 1523485 at *2. Because "the trust's having title in half of the property protects [the non-filing spouse's] interest," Judge Drake sustained the trustee's objection. *Burroughs*, 2015 WL 1523485, at *2.

---

[24] The debtor initially claimed a $43,000.00 double exemption but later amended his Schedule C to claim a $38,475.00 homestead exemption and a $4,525.00 "wildcard" exemption, which allows a Georgia debtor to exempt "[t]he debtor's aggregate interest, not to exceed $1,200.00 in value plus any unused amount of the [homestead] exemption, not to exceed $10,000.00 . . . in any property[.]" O.C.G.A. § 44-13-100(a)(6).

31

The Court finds that both Judge Mullins in *Taylor* and Judge Drake in *Burroughs* reached the right result, but in doing so they went beyond the statutory text of O.C.G.A. § 44–13–100(a) and unnecessarily inquired into the statute's purpose. They could have reached the same result through a straightforward application of the statute's language that title must be "in *one* of two spouses who is a debtor." The Court reads that language to mean that if only one spouse is a debtor in bankruptcy, and the debtor owns the residence *jointly* with a non-filing spouse, the debtor can claim only the single exemption of $21,500.00. In *Taylor*, only one spouse was in bankruptcy, and she jointly owned the residence with her non-filing spouse. And in *Burroughs*, the debtor's non-filing spouse effectively had joint title to the residence through the living trust. In both circumstances, the plain language of O.C.G.A. § 44–13–100(a) limits the debtor to the single homestead exemption.

Contrary to the views of Judges Diehl, Mullins, and Drake, it is not at all clear from the text of O.C.G.A. § 44–13–100(a)(1), or from its meager legislative history, that the General Assembly sought to protect from creditors the equitable interest of a debtor's non-filing spouse. The Court agrees instead with Judge Walker in *In re Green*, 319 B.R. 913 (Bankr. M.D. Ga. 2004) (Walker, J.). There, Judge Walker stated that "the only evidence of legislative intent . . . is the previous version of the homestead exemption," which lacked the double exemption provision. *Id.* at 915. In 2001, the General Assembly added the second sentence of O.C.G.A. § 44–13–

32

100(a)(1) creating the double exemption. Based on that addition, Judge Walker stated that "[a]t best, it may be reasonable to infer that the legislature wanted to ensure that married debtors always get the benefit of a double exemption as if both spouses were debtors and the property jointly owned." *Id.* at 915. "So it added a sentence to cover one specific set of circumstances under which they might otherwise be denied the double exemption." *Id.* Judge Walker observed that a court "can only read what the legislature puts before it," and he declined to "usurp the power of the General Assembly by legislating from the bench each time the exemption statute creates an unusual result." *Id.* at 916.

Here, as previously discussed, the plain language of O.C.G.A. § 44–13–100(a)(1) permits the Debtor to claim the $43,000.00 double exemption. She is a married person, title to the property is in her name rather than in her spouse's, and she and her husband use the property as their residence. Nothing in the statute requires the Debtor's husband to have an equitable interest in the property, and, like Judge Walker, the Court declines to read such a requirement into the text "based on one party's notion of fairness in a particular set of unusual circumstances." *Id.* at 915. Having rejected the Trustee's arguments from both the statute's text and its purpose, the Court finds that the Trustee has failed to carry his burden of proof under Bankruptcy Rule 4003(c).

33

## IV. Conclusion

Due to the awkward wording of O.C.G.A. § 44–13–100(a)(1), courts have understandably struggled to determine when a debtor is entitled to claim the double homestead exemption. The cases interpreting the statute demonstrate that the analysis turns on two variables: (1) whether one or both spouses have filed for bankruptcy; and (2) whether the residence is owned by the filing spouse or the non-filing spouse or both spouses. Based on the statutory text and the relevant case law, the Court finds that the following five rules can be derived from O.C.G.A. § 44–13–100(a)(1):

- Rule 1: If married persons file a joint bankruptcy case and jointly own their residence, they can claim a combined exemption of $43,000.00, or $21,500.00 each.[25]

---

[25] To be precise, the scenario in Rule 1 does not involve a double exemption claimed by a single debtor. Rather, in that scenario two debtors in a joint bankruptcy case claim two exemptions that total $43,000.00. Section 302(a) of the Bankruptcy Code provides that "[a] joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's spouse." 11 U.S.C. § 302(a). Under § 302(b), "[a]fter the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated." 11 U.S.C. § 302(b). Thus, "[a] joint petition 'simply results in two different debtors' bankruptcy cases being commenced by a single petition and treated as a single case for administrative purposes.'" *In re Ward*, 652 B.R. 250, 261 (Bankr. D.S.C. 2023) (quoting *In re Waring*, 555 B.R. 754 (Bankr. D. Colo. 2016)). "Said differently, separate estates continue to exist as to each debtor." *Id.* Under § 522(m), "[s]ubject to the limitation in [§ 522(b)]," the federal exemptions "shall apply separately with respect to each debtor in a joint case." 11 U.S.C. § 522(m). The Bankruptcy Code thus "anticipates married debtors in a joint case will make separate claims to exemptions." *In re Evans*, 449 B.R. 827, 830 (Bankr. N.D. Ga. 2010) (Drake, J.). *See also* Fed. R. Bankr. P. 1015(b) ("An

- Rule 2: If married persons file a joint bankruptcy case, and their residence is titled in only one of the debtors, that debtor can still claim an exemption of $43,000.00.[26]

---

order directing joint administration of individual cases of spouses shall, if one spouse has elected the exemptions under § 522(b)(2) of the Code and the other has elected the exemptions under § 522(b)(3), fix a reasonable time within which either may amend the election so that both shall have elected the same exemptions."). Courts disagree as to whether § 522(m) applies in opt-out states. *Compare Cheeseman v. Nachman (In re Cheeseman)*, 656 F.2d 60, 63 (4th Cir. 1981) (holding that § 522(m) requires interpreting Virginia's homestead exemption provision "to allow a homestead exemption to each spouse living together if he or she contributes to the maintenance of the household"), *with Stevens v. Pike Cnty. Bank*, 829 F.2d 693, 695 (8th Cir. 1987) ("while subsection (m) provides for separate federal homestead exemptions to debtors in a joint case, it has no force where a state opts out of the federal plan under subsection (b)"), *and Granger v. Watson (In re Granger)*, 754 F.2d 1490, 1492 (9th Cir. 1985) (holding that "a state which opts out of § 522(d) and provides its own system of exemptions is not bound by subsection (m) as to those exemptions."). In *First Nat'l Bank of Mobile v. Norris*, 701 F.2d 902 (11th Cir. 1983), the Eleventh Circuit held that because Alabama opted out of the federal exemptions, § 522(m) "neither applies to Alabama exemptions nor conflicts with the Alabama provision allowing only one homestead exemption to joint debtors." *Id.* at 905. In other words, § 522(m) "does not operate to give separate homestead exemptions to joint debtors under Alabama law." *Id.* The Georgia exemption statute does not explicitly limit debtors in a joint case to a single homestead exemption. Rather, it consistently speaks of an *individual* debtor in the singular. *See, e.g.,* O.C.G.A. §§ 44-13-100(a) ("any debtor who is a natural person may exempt . . .); 44-13-100(b) ("an individual debtor whose domicile is in Georgia . . . ). The Court therefore reads O.C.G.A. § 44-13-100(a)(1) as permitting each spouse in a joint case to claim a $21,500.00 exemption, for a combined total of $43,000.00.

[26] In *Burnett*, the judgment creditor argued that O.C.G.A. § 44-13-100(a)(1) permitted the double exemption *only* when both spouses were debtors in bankruptcy. Judge Walker rejected that argument, stating that "the statute imposes no *requirement* that the non-titled spouse also be in bankruptcy." *Burnett*, 303 B.R. at 686 (emphasis added). The Court reads the statute as permitting, while not being limited to, the scenario in Rule 2.

35

- Rule 3: If only one spouse is a debtor in bankruptcy, and the residence is titled only in the debtor and not in the non-filing spouse, the debtor can claim an exemption of $43,000.00.[27]

- Rule 4: If only one spouse is a debtor in bankruptcy, and the debtor owns the residence *jointly* with a non-filing spouse, the debtor can claim an exemption of only $21,500.00.[28]

- Rule 5: If only one spouse is a debtor in bankruptcy, and the debtor's non-filing spouse owns the residence, the debtor cannot claim an exemption at all.[29]

The Court's holding in this case does not contradict any of the foregoing rules, but represents a variation of Rule 3: If only one spouse is a debtor in bankruptcy, and that debtor has only a partial interest[30] in the residence, she may be entitled to claim

---

[27] Rule 3 was the scenario in *Burnett* and in *Green*. In both cases Judge Walker allowed the double exemption.

[28] Rule 4 was the scenario in *Taylor* and in *Burroughs*, where Judge Mullins and Judge Drake, respectively, disallowed the double exemption and permitted the debtor to claim only a single exemption. It was also the scenario in *In re Hiers*, No. 03-51446-JDW, 2005 WL 4980260, at *2 (Bankr. S.D. Ga. Sept. 26, 2005) (Walker, J.), where Judge Walker disallowed the double exemption. It follows from the plain language of O.C.G.A. § 44-13-100(a)(1) that title must be "in *one* of two spouses who is a debtor[.]"

[29] Rule 5 follows from the plain language of O.C.G.A. § 44-13-100(a)(1) that title must be "in one of two spouses *who is a debtor*[.]"

[30] The Court makes no attempt to compile a complete list of exemptible property interests for fear of leaving one out. The term "estate," for instance, means "the quantity of interest which an owner has in real or personal property." O.C.G.A. § 44-1-4. Such an estate can range "from absolute ownership down to naked possession." *Warehouses, Inc. v. Wetherbee*, 203 Ga. 483 (1948). *See*

an exemption of $43,000.00. Under the facts of this case, the Court finds that the

Debtor's partial interest is sufficient to support the double homestead exemption.

Dated at Savannah, Georgia, this 13th day of November, 2024.

Edward J. Coleman, III, Judge
United States Bankruptcy Court
Southern District of Georgia

---

*generally* Daniel F. Hinkel, *Pindar's Ga. Real Estate Law & Procedure with Forms* (2024 ed.). Although not binding, cases from other jurisdictions support the proposition that a partial interest suffices to support a debtor's claimed homestead exemption. *See In re Archuletta*, 614 B.R. 892 (Bankr. D.N.M. 2020) (holding that debtor was entitled to claim homestead exemption in undivided 1/4 interest in a house titled in name of debtor's deceased parents); *In re Williams*, 427 B.R. 541 (Bankr. M.D. Fla. 2010) (holding that debtor was entitled to claim homestead exemption in vested remainder interest subject to mother's life estate where he resided in the home).